# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| JOHN P. DAVIS and OZELL B. DAVIS, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No.: 5:06-CV-1904-VEH<br>)<br>) |
| BRAD FREEMAN, JAMES FULTON, KELLY ROBERTS, and CITY OF HARTSELLE, ALABAMA, a municipal corporation, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OF OPINION

This action comes before the court on the Motion to Dismiss (doc. 12) filed by the remaining defendants[1], Brad Freeman, James Fulton Webster, and Kelly Roberts (collectively, the "Defendants"). The Motion seeks to dismiss the Plaintiffs' Amended Complaint (doc. 10). The Defendants have filed a brief (doc. 13), the Plaintiffs have filed an opposition (doc. 21), and the Defendants have replied (doc. 22). Upon consideration, Defendants' Motion to Dismiss is due to be **GRANTED**

---

[1] On October 25, 2006, the court dismissed with prejudice all claims against the City of Hartselle, Alabama. (Order, doc. 21).

in part and **DENIED** in part.  Specifically, all of Plaintiffs' claims for outrage (Count VI) are due to be **DISMISSED WITH PREJUDICE**.  Further, all of Plaintiffs' claims (Counts I, II,  and III) against the Defendants for the two forcible entries and the first pointing of guns are due to be **DISMISSED WITH PREJUDICE**  In all other respects, the Motion is due to be **DENIED**.[2,3]

### Factual Background[4]

Plaintiffs initiated this lawsuit against Defendants alleging a violation of their Fourth Amendment rights to be free of unreasonable searches and seizures in violation of 42 U.S.C. § 1983 (Count I) when the Defendants, responding to a report of domestic violence that reportedly had resulted in the stabbing of at least one person, without knocking or otherwise announcing their presence, forcibly entered the Plaintiffs' residence and used unreasonable force by pointing their pistols toward both Plaintiffs, left, then "returned after a brief time and thereupon [again] pointed pistols toward the Plaintiff, Ozell B. Davis." The Plaintiffs also assert state law claims

---

[2] Counts Four and Five were dismissed by prior Order of this court (doc. 20).

[3] Defendants argue that Count V, negligence, has already been dismissed because Plaintiffs' demand set forth in that Count lies only against the City of Hartselle, Alabama.  The Plaintiffs have not argued otherwise, therefore the court determines that there are no claims in Count V against these Defendants and that Count V has been dismissed with prejudice.  *See* footnote 2.

[4] The "facts" stated herein are the factual allegations in Plaintiffs' Amended Complaint.

of assault (Count II), trespass (Count III), and outrage (Count VI). Defendants have moved to dismiss all (remaining) counts. They seek dismissal of Plaintiffs' § 1983 claim, arguing that Plaintiffs fail to meet the heightened pleading requirement or, in the alternative, that the claim fails because the Defendants are entitled to qualified immunity. Defendants move for dismissal of Plaintiffs' state law claims on the basis that they are statutorily immune from liability.

## **Applicable Standard**

In accordance with FED.R.CIV.P. 12(b)(6), a court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 - 46 78 S.Ct. 99, 2 L. Ed. 2d 80 (1957) (citations omitted). Under Rule 8, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

However, where, as here, the plaintiffs allege that defendants acted in violation of their constitutional rights and § 1983, the Eleventh Circuit "has tightened the liberal pleading requirement of FED.R.CIV.P. 8 in an effort to weed out nonmeritorious claims." *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1367 (11th Cir. 1998). As a result, when pleading a § 1983 claim, a

plaintiff is required to "allege with some specificity the facts which make out [his or her] claim." *Id*. "[M]ore than mere conclusory notice pleading is required. [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).[5]

## Discussion

### Section 1983 Claims[6]

### Heightened Pleading Requirement

To sustain a § 1983 cause of action, a plaintiff must establish two elements: (1) that he suffered a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States; and (2) the act or omission causing deprivation was committed by a person acting under color of law. *Wideman v. Shallowford Community Hospital*, 826 F.2d 1030, 1032 (11th Cir. 1987). Defendants contend that Plaintiffs' § 1983 claims for unreasonable searches and seizures fail to

---

[5] Notwithstanding the Supreme Court's rejection of a heightened pleading standard as to claims against municipalities, *see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, et al.*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed. 2d 517 (1993), nonetheless, the Eleventh Circuit continues to apply a heightened pleading standard in cases such as this one, where the defendants are entitled to raise the defense of qualified immunity at the earliest stage of the proceeding. *See, e.g., Dalreymple v. Reno*, 334 F.3d 991, 994-995 (11th Cir. 2003). For the reasons stated below, Plaintiffs' allegations provide more than "mere conclusory notice" and, in turn, Plaintiffs sufficiently state a claim under § 1983, even under a heightened pleading requirement.

[6] All claims presumably are made against Defendants in their individual capacities. No one has alleged otherwise.

meet the heightened pleading requirement imposed by *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F. 1359, 1367 (1998).

In the Amended Complaint, Plaintiffs allege that on or about November 8, 2005, at approximately 9:00 p.m. (doc. 10, ¶ 5), the Defendants, responding to a report of domestic violence (*id.*, ¶ 29) and believing a person to have been stabbed (*id.*, ¶ 11), "broke into and forcibly entered the residence of the Plaintiffs without either [sic] a search warrant, an arrest warrant or probable cause for believing that any occupant of the residence had committed a crime or that forcible entry would reveal contraband, evidence of a crime, a person in need of medical attention[,] or other exigent circumstances compelling the warrantless, forcible entry of the Plaintiffs' residence." (*Id.*, ¶ 5). Plaintiffs allege that the Defendants had been "dispatched to address a report of domestic violence" at "'1154 Nance Ford Road, Hartselle, Alabama'" (*id.*, ¶ 29), which was <u>not</u> the address of the Plaintiffs' residence (*id.*, ¶ 11), and that the Defendants were negligent in assuming the Plaintiffs' residence's address to be 1154 Nance Ford Road, Hartselle, Alabama. (*Id.*, ¶ 29). Plaintiffs further allege that the Defendants pointed their weapons toward the Plaintiffs without any reasonable belief that such force was necessary. (*Id.*, ¶ 10). The Plaintiffs further allege that the Defendants left the Plaintiffs' residence but "returned after a brief time and . . . [again] pointed pistols toward the Plaintiff, Ozell B. Davis . . ." (*Id.*, ¶ 11).

Plaintiffs allege that the Defendants' forcible entry was without "any [objectively] reasonable belief that they had probable cause to justify their forcible entry into the Plaintiffs' residence." (*Id*., ¶¶ 6, 7, 8). They further allege that Defendants used "unreasonable force" when they pointed their guns at the Plaintiffs. (*Id*., ¶ 10).

These allegations, even under a heightened pleading standard, sufficiently set forth Plaintiffs' § 1983 claims against the Defendants. Plaintiffs have alleged the relevant facts with "some specificity." *See Gonzalez v.Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). These allegations provide more than "mere conclusory notice" of Plaintiffs' claims for unreasonable searches and seizures and excessive force in violation of § 1983. Simply put, Plaintiffs' allegations put Defendants on notice of the nature of Plaintiffs' claims and include the facts, including the time, date, location and circumstances surrounding the alleged constitutional violations. Accordingly, dismissal of Plaintiffs' § 1983 claims for failure to adequately plead such claims is not appropriate.

*Fourth Amendment Right To Be Free From Unreasonable Search and Seizure*

The Plaintiffs contend that the Defendants violated their Fourth Amendment right to be free from unreasonable searches and seizures. The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const., amend. 4; *see also United States v. McBean,* 861 F.2d 1570, 1573 (11th Cir. 1988) ("The Fourth Amendment to the Constitution prohibits, on its face, unreasonable searches and seizures[.]"). The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *Michigan v. Summers,* 452 U.S. 692, 694 n. 2, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

## Unreasonable Search

The Plaintiffs have stated a Fourth Amendment unreasonable search claim against the Defendants. The two forcible entries as alleged are a cognizable claim under the Fourth Amendment. *See, Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342 (1979) (A person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.) *See also*, *Sibron v. New York,* 392 U.S. 40, 62-63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968).

## Excessive Force

The Plaintiffs have alleged that the Defendants used excessive force when the Defendants (twice) pointed their guns at the Plaintiffs.

"The first step in reviewing an excessive force claim is to determine whether the plaintiff was subject to the 'intentional acquisition of physical control' by a government actor." *Vaughn v. Cox*, No. 00-14380,-F.3d-, 2003 WL 22025451, at *3

(11th Cir. Aug. 29, 2003). Here, the Plaintiffs clearly have alleged such intentional acquisition of physical force. The question then becomes what amount of force was reasonable under the circumstances. The use of a gun is permissible when the officer reasonably believes it is necessary for his protection. *U.S. v. Roper,* 702 F.2d 984, 988 (11th Cir. 1983); *United States v. Merritt,* 695 F.2d 1263, 1273 (10th Cir. 1982); *Worthington,* 544 F.2d at 1280 n. 3. Here, the Plaintiffs have alleged that the Defendants twice pointed their guns at "the Plaintiffs": (1) upon their first forcible entry, and (2) again upon their second entry into the house, after they had already entered once without finding any evidence of a crime victim and without making any arrests. While the Defendants may be able to establish that such force was justified under the circumstances, the Plaintiffs' allegations are sufficient to establish a claim of excessive force as to the pointing of guns at the second entry.

## Qualified Immunity

The Defendants contend that they are immune from liability because they enjoy the protection of qualified immunity. The defense of qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11 Cir. 2003) (citing *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515,

153 L.Ed.2d 666, 153 L.Ed. 266 (2002)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (citing *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002)).

"Because qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' questions of qualified immunity must be resolved 'at the earliest possible stage in litigation.' " *Id.* (citing *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam)). It is appropriate to apply the defense of qualified immunity at the motion to dismiss stage if the complaint "fails to allege the violation of a clearly established constitutional right." *Id.* (citations omitted).

To determine the propriety of qualified immunity, the government official's conduct is evaluated under an "objective legal reasonableness" standard. *Koch v. Rugg,* 221 F.3d 1283, 1295 (11th Cir. 2000) (citations omitted). The official's subjective intent is irrelevant to the inquiry. *Id.* The Supreme Court has established a two-part test to determine the applicability of qualified immunity. *Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003). First, the Court must determine whether the Plaintiff has alleged the deprivation of a constitutional right. *Id.* The second step in

the analysis is to determine whether Plaintiff's right was clearly established at the time the alleged violation occurred. *Id.*

A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). In *Hope,* the Supreme Court articulated the standard for determining whether the law is "clearly established":

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; [ ] but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope,* 536 U.S. at 739 (citations and quotations omitted).[7]

It is undisputed that each of the Defendants was acting within the scope of his discretionary authority when he entered the Plaintiffs' residence (each time) and when he pointed his gun at the Plaintiffs (each time). As discussed above, Plaintiffs allege that the Defendants' forcible entry into their residence was unreasonable, and that the

---

[7] In this Circuit, the law may be clearly established for qualified immunity purposes only by opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeal, or the highest court of the state whose law is at issue. *Hamilton v. Cannon,* 80 F.3d 1525, 1531-31 n. 7 (11th Cir. 1996).

Defendants' pointing their guns at the Plaintiffs was excessive force; therefore, the Plaintiffs have alleged the deprivation of a constitutionally protected right, namely the right to be free from unreasonable searches and seizures under the Fourth Amendment, which includes the right to be free from excessive force. *See, Mercado v. City of Orlando,* 407 F.3d 1152, 1156-57 (11th Cir. 2005) (citing *Graham v. Connor,* 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Accordingly, the only issue is whether the Plaintiffs' rights were clearly established in light of the facts alleged in the Amended Complaint.

The Defendants are entitled to qualified immunity as to both forcible entries. Controlling precedent establishes the fact that an officer's search, based upon a reasonable belief that he possesses a valid search warrant, despite that fact that such belief is mistaken, is sufficient to make the search "reasonable" under the Fourth Amendment. *See*, *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L. Ed. 2d 72 (1987). The fact that these Defendants did not possess a search warrant, but were responding to a report of domestic violence, does not alter the analysis. Even drawing all reasonable inferences in favor of the Plaintiffs, as the court must do at this stage, the Plaintiffs have not alleged that the Defendants did not reasonably believe <u>at the time of either entry</u> that a report of domestic violence had been made as to Plaintiffs' premises. Rather, they have alleged that the Defendants were negligent in

mistaking their house for the premises described in the report. Mere mistake of fact cannot abrogate qualified immunity. The allegation that the Defendants were negligent is nothing more than a conclusion, and adds nothing to the analysis. Even as to the second entry, when reasonable inferences in favor of the Plaintiffs are that the Defendants knew that they had not, during their initial search, located a person who had been stabbed and had not come across any evidence of any criminal activity, does not create a reasonable inference that the Defendants did not reasonably believe that they were responding to a report of domestic violence that had occurred at the Plaintiffs' residence. The Defendants' leaving the house for an admittedly "brief" period did not terminate their initial investigation of the domestic violence report so as to make the second entry unreasonable. The reasonable inference from the Plaintiffs' Amended Complaint is that the Defendants were not given any notice that they might be at the wrong residence until <u>after</u> the second entry when, after the Defendants "demand[ed] information about the whereabouts of a person who had been stabbed[,] ... the Plaintiff, Ozell B. Davis, produced a magazine with an address label demonstrating that her address was different from the one the Defendants assumed her address to be." (doc. 10, ¶ 11).

Thus, the Defendants are entitled to qualified immunity as to both forcible entries, and Plaintiffs' claims based upon those entries are due to be **DISMISSED**

**WITH PREJUDICE**.

Determining whether the force used was reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake. *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Crosby v. Paulk,* 187 F.3d 1339, 1351 (11th Cir. 1999). Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish,* 41 U.S. 520, 559 (1979), "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight. " *Graham,* 490 U.S. at 396. Therefore, "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' " *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham* 490 U.S. at 396).

Again drawing all reasonable inferences in favor of the Plaintiffs, the Defendants are entitled to qualified immunity as to the initial pointing of guns (during the first entry) at the Defendants. The Amended Complaint alleges that the

13

Defendants were responding to a report of domestic violence and that they were seeking a "person who had been stabbed." Thus, the reasonable inference is that the Defendants were responding to a report of a person having been stabbed and expected that person (and, potentially, the person who had done the stabbing) to be at the address they had entered.

The use of a knife to stab a person is potentially deadly force. *See, Tamagni v. McGrath*, 2005 WL 1287936, *4 (E.D. Cal. 2005). An officer who is responding to a report of use of deadly force does not use excessive force when he draws, but does not use, his gun. *See*, *Jackson v. Sauls*, 206 F.3d 1156, 1171 -1172 (11th Cir. 2000) ("The right to make an investigatory stop carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Graham,* 490 U.S. at 396, 109 S.Ct. 1865. Determining whether the degree of force used was reasonable requires consideration of the exigencies of the immediate situation and the officers' being forced to make split-second decisions. Additionally, this Court has held that an officer's drawing a weapon and ordering a person stopped to lie on the ground does not necessarily constitute excessive force during an investigatory stop. *See Courson v. McMillian,* 939 F.2d 1479 (11th Cir. 1991) (holding that a deputy did not use excessive force during an investigatory stop in requiring the female companion plaintiff, who was never arrested, and the two males, who were later arrested, to lie

face down on the ground with a shotgun pointed at them)."). Because the Plaintiffs have alleged facts that show that the Defendants, at the time they entered the Plaintiffs' residence the first time, had reason to believe that deadly force had been used, the Plaintiffs have failed to allege that the Defendants' pointing of their guns at the Plaintiffs was excessive force.

However, still drawing all reasonable inferences in light of the Plaintiffs, it is reasonable to infer that, at the time of the second entrance, Defendants had previously confronted the Plaintiffs without an arrest and without finding an injured person, such that it was no longer reasonable for the Defendants to believe that these Plaintiffs posed any kind of risk of harm to the Defendants (or, for that matter, of flight). Thus, based on the allegations of the Amended Complaint, this court cannot conclusively determine that the Defendants' use of force was not excessive. Thus, the Defendants are not entitled to have Plaintiffs' claims of excessive force arising out of the second entry and pointing of guns at them dismissed based on qualified immunity at the motion to dismiss stage. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (officer not entitled to qualified immunity where plaintiff did not pose a threat of bodily injury to officer and was not attempting to flee or resist arrest). *See also*, *Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1280 (11th Cir. 2004) (risk of death from firearms is high).

*State Law Claims - Assault and Trespass*[8]

The Defendants contend that they are statutorily immune from suit pursuant to § 6-6-338(a), CODE OF ALABAMA 1975 and also under the common law doctrine of discretionary function immunity applicable to public officials such as police officers. Section 6-6-338(a) provides:

> (a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Plaintiffs implicitly concede that these Defendants were exercising discretionary

---

[8] Plaintiffs have not opposed Defendants' Motion to Dismiss Plaintiffs' claim of outrage (Count VI). Additionally, the court finds that such claim is properly dismissed. *See*, *Thomas v. BSE Industrial Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993), which noted that the Alabama Supreme Court has found a jury question on a tort of outrage claim only within three categories of claims: 1) cases having to do with wrongful conduct in the context of family burials; 2) a case where insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim; and 3) a case involving egregious sexual harassment. Therefore, Plaintiffs' claim of outrage is **DISMISSED WITH PREJUDICE**.

16

functions when they twice entered the Plaintiffs' house forcibly and twice pointed their guns at Plaintiffs.

What Plaintiffs contest is that state agent immunity does not apply "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." (doc. 21, p.7, quoting *Ex Parte Cranman*, 792 So.2d 392 (Ala. 2000). Citing *Delchamps v. Larry*, 613 So.2d 1235, 1239 (Ala. 1993), Plaintiffs further argue that they have alleged legal "malice" by alleging facts establishing that the Defendants lacked probable cause and that they "could have entertained no reasonable belief that probable cause existed." (*id.*, p.8). That is, they argue that *Delchamps* stands for the proposition that "*malice* might be inferred from the 'lack of probable cause or from mere wantonness or carelessness.'" (*id.*) (emphasis in original).

This court declines to extend the holding in *Delchamps*, a malicious prosecution case against a grocery store, to a claim against persons who may be entitled to discretionary function immunity under ALA. CODE § 6-6-338(a). As Defendants point out, the Alabama Supreme Court has declined to infer malice where the police officer had a reasonable belief that he had probable cause.

> [Section 6-6-338(a)] extends discretionary function immunity to municipal police officers ... unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in in

>bad faith. [Citation omitted.] However, it would be pure speculation for one to infer from Couch's evidence that Lesley had a personal ill will against him and that he maliciously or in bad faith arrested him solely for purposes of harassment. There is nothing to reasonably dispute Lesley's affidavit testimony that he *believed* he had probable cause to arrest Couch based on Couch's appearance and demeanor.

*Couch v. City of Sheffield*, 708 So.2d 144, 153 -154 (Ala. 1998).  Here, even drawing all reasonable inferences in light of the Plaintiffs, the Defendants reasonably believed[8] that a person who had been stabbed would be found at the Plaintiffs' house. Under the facts alleged by Plaintiffs, such belief was reasonable <u>until the Defendants were put on notice</u>, <u>after</u> the second forcible entry, by Ozell B. Davis's showing them a magazine label with a different address than the address they believed they were in, that they were at the wrong address.  However, as stated above, this court cannot find that it was reasonable for the Defendants, under the facts and circumstances alleged in the Amended Complaint, to believe that it was reasonable for them to point their weapons at the Plaintiffs upon or after entering the Plaintiffs' house for the second time.

Therefore, the court will **DISMISS WITH PREJUDICE** all claims for trespass (Count III) and will **DISMISS WITH PREJUDICE** all claims for Assault (Count II) other than those arising out of the pointing of guns at the Plaintiffs after

---

[8]Although the Plaintiffs allege that the Defendants were mistaken.

the second entry into their home.

**DONE** and **ORDERED** this 4th day of December, 2006.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge